Argued and submitted November 5, 1993, reversed in part; otherwise affirmed
February 23, 1994

## G & G ELECTRIC AND
## PLUMBING DISTRIBUTORS, INC.,
*Petitioner,*

*v.*

## OREGON OCCUPATIONAL SAFETY &
## HEALTH DIVISION,
*Respondent.*

## (SH-92160; CA A79120)

869 P2d 378

Thomas W. Sondag argued the cause for petitioner. With him on the brief was Lane Powell Spears Lubersky.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

In this proceeding under the Oregon Safe Employment Act, ORS chapter 654, employer seeks review of an order of the Workers' Compensation Board affirming a citation of the Oregon Occupational Safety and Health Division (OR-OSHA) and assessing a penalty against employer for failing fully to develop and maintain a "written hazard communication program," as required by OAR 437-155-015(1).[1]

A partial overview of Oregon's administrative rules regarding "hazard communication" is in order. The purpose of the rules, OAR chapter 437, division 155, is

"to ensure that the hazards of all chemicals produced or imported are evaluated, and that information concerning their hazards is transmitted to employers and employes. This transmittal of information is to be accomplished by means of comprehensive hazard communication programs, which are to include container labeling and other forms of warning, Material Safety Data Sheets and employe training." OAR 437-155-003(1).

The rules are "intended to address comprehensively the issue of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employes." OAR 437-155-003(2). Evaluating the potential hazards of chemicals and communicating information concerning hazards to employees

"may include, for example, but is not limited to, provisions for: developing and maintaining a written hazard communication program for the workplace, including lists of hazardous chemicals present; labeling of containers of chemicals in the workplace, as well as of containers of chemicals being shipped to other workplaces; preparation and distribution of Material Safety Data Sheets to employes and downstream employers; and development and implementation of employe training programs regarding hazards of chemicals and protective measures." OAR 437-155-003(2).

The rules require

"chemical manufacturers or importers to assess the hazards of chemicals which they produce or import, and all employers

---

[1] The order of the referee is deemed to be the final order of the Board. ORS 654.290.

to provide information to their employes about the hazardous chemicals to which they are exposed, by means of a hazard communication program, labels and other forms of warning, Material Safety Data Sheets, and information and training." OAR 437-155-004(1).

Employers must make sure that hazardous materials are labeled with legible and understandable information regarding the identity of the chemical and the appropriate hazard warnings. OAR 437-155-020(5), (10). They must maintain "Material Safety Data Sheets" (MSDSs) for each hazardous chemical in the workplace and ensure that the sheets are readily accessible to employees in their work areas. OAR 437-155-025(8). An MSDS contains information regarding the hazardous chemical and its common ingredients, its physical hazards (such as potential for fire or explosion), its health hazards, including signs and symptoms of exposure, precautions for its safe handling and use, procedures for cleanup of spills and leaks, and emergency and first aid procedures. OAR 437-155-025(2).

Additionally, employers are required to develop and maintain a "written hazard communication program." OAR 437-155-015 provides:

"(1) Employers shall develop, implement, and maintain at the workplace, a written hazard communication program for their workplaces which at least describes how the criteria specified in OAR 437-155-020 through 437-155-030 of this division for labels and other forms of warning, Material Safety Data Sheets, and employe information and training will be met, and which also includes the following:

"(a) A list of the hazardous chemicals known to be present using an identity that is referenced on the appropriate Material Safety Data Sheet (the list may be compiled for the workplace as a whole or for individual work areas); and,

"(b) The methods the employer will use to inform employes of the hazards of non-routine tasks (for example, the cleaning of reactor vessels), and the hazards associated with chemicals contained in pipes in their work areas.

"* * * * *

"(4) The employer shall make the written hazard communication program available, upon request, to employes, their designated representatives, and the administrator, in

accordance with the requirements of Division 200, Employe Access to Exposure and Medical Records.''

Finally, employers must provide employees with information and training regarding hazardous chemicals. Employees must be informed of ''the location and availability of the written hazard communication program, including the required list of hazardous chemicals and Material Safety Data Sheets required by this division.'' ORS 437-155-030(1).

The material facts of this case are not disputed. Employer is a retail sales facility for electrical and plumbing supplies. Employer commonly used a pipe-threading lubricant and a cleaning and polishing chemical. The pipe-threading lubricant is combustible and can produce acid gases. Prolonged contact with the skin can lead to irritation, and inhalation of its fumes can result in dizziness, headache, respiratory irritation or unconsciousness. It is slippery when spilled. The cleaning and polishing chemical contains petroleum distillates. It is harmful if swallowed, but vomiting should not be induced. High concentrations can cause anesthesia. Protective eyeglasses and aprons are recommended.

The Board's referee found that employer maintains an up-to-date binder of MSDSs in the employee break room, pertaining to every hazardous material used on the premises. Employer has required all managers to inform all employees of the contents of the MSDS binder and its location. Employer maintains a safety bulletin book, which is available to all employees in the break room and which contains all safety bulletins after they have been posted on a bulletin board for a certain length of time. Employer requires its employees to attend a monthly safety meeting, at which the use of hazardous chemicals and the MSDSs are discussed.

An OR-OSHA safety compliance officer (SCO) inspected employer's premises. He examined employer's MSDS book and found an MSDS for each of the chemicals used on the premises. He found no other written information on those materials, such as the method employer would use to inform employees of the hazards of nonroutine tasks, as required by OAR 437-155-015(1)(b). The inspection resulted in a citation for failing to have a proper written hazard communication program. At the hearing, the SCO explained

that the citation was issued because employer did not have a single written document explaining the MSDSs and containing a list of hazardous chemicals known to be present at the worksite.

The referee found that employer is

"clearly conscientious and safety minded but the information required by OAR 437-155-015 is available from a number of different sources, such as Material Safety Data Sheets, safety bulletins, and safety meetings, rather than one source. That may be and probably is sufficient for conscientious and diligent employees, but the standard appears to [be] aimed at insuring inclusion of less diligent and conscientious employees who might require more 'hand holding' in the sense of one easy source to which reference can be made for the purpose of obtaining the required information. In a sense it is 'nit-picking', and because of that I am sympathetic to the position of an employer that is clearly doing a good job and probably often feels great frustration with what may be perceived to be an unreasonable bureaucracy. On the other hand, as [counsel for OR-OSHA] rightly points out, it is the job of Oregon OSHA to nit-pick, and in the interest of safety to err, if there be error, on the side of safety."

The referee interpreted the administrative rules to require that the employer maintain all the information set out in the OAR 437-155-015(1) in a single, written document. The referee found that the information required by OAR 437-155-015 was available on employer's premises from a number of different sources, but that it was not in the form of a single, written document. He held that, although employer had demonstrated that it is conscientious and maintains high standards of safety, it had violated the administrative rules by failing to have a single, written hazard communication document. In the light of employer's exemplary and laudable safety efforts, the referee characterized the violation as "nit-picking," but a violation nonetheless. Employer concedes that it does not maintain a single, integrated document containing all of the information required by OAR 437-155-015. It contends, however, that taken together, its various writings and trainings satisfy the requirements of the rule.

 We, too, applaud employer for maintaining a program of safety on its premises that is obviously intended to educate

and inform its employees concerning work hazards and to prevent accidents that could cause injury. We conclude, however, that employer's failure to maintain a single, integrated written document as a hazard communication plan is a significant shortcoming, not mere "nit-picking." A single integrated document explaining how the employer will comply with the requirements of the administrative rules regarding hazard communications, containing a list of hazardous materials, and describing the methods the employer will use to inform employees of the hazards of nonroutine tasks is the core of the entire hazard communication policy. It ensures that the employer has made a study of the workplace, has identified all hazardous materials and has developed a cohesive plan as to the precautions that should be taken and the methods by which information will be communicated to employees. It enables monitoring of the employer's hazard communication program. All of these factors are consistent with the stated purpose and intent of the rules regarding hazard communication. Accordingly, we hold that the referee reasonably interpreted OR-OSHA's rules to require that the "written hazard communication program" be in a single written document. Employer has no single document that meets the description contained in OAR 437-155-015. Therefore, we affirm the Board's determination that OR-OSHA established the alleged violation.

We turn to the question of the penalty. The Director of the Department of Consumer and Business Services is required by statute to assess a civil penalty for serious violations of the occupational safety statutes or rules; the Director is authorized to assess a civil penalty for a violation that is not of a serious nature. ORS 654.086(a), (b). The parties agree that employer's violation is not of a serious nature.

The administrative rules define two categories of non-serious violations: A "minimal" violation is one that "does not have a direct or immediate relationship to the safety or health of employees." No penalty may be assessed for such a violation. A "general violation" is one that is "other than a minimal violation or a serious violation," OAR 437-01-015(55), and for which a penalty is authorized.

■ The Director has promulgated a schedule of penalties for general violations, based on the "probability" that an

accident could result in injury or illness from a violation and the "severity" of injury or illness that is reasonably predictable if the event occurs. Both the probability and severity factors are determined by the SCO after on-site inspection. OAR 437-01-145; *see Accident Prevention Div. v. Asana*, 110 Or App 103, 107, 821 P2d 432 (1991). Probability is rated low "if the factors considered indicate it would be unlikely that an accident could occur," moderate if "likely," and high if "very likely." Severity is rated low if the conditions "could cause minor injury or illness," and moderate if the conditions "could cause significant injury or illness to employees, but would not involve serious physical harm." OAR 437-10-135(3).

■ If both the probability and severity of an injury are low, then the rules provide for no penalty. If the severity rating is moderate or greater, then the rules provide for the assessment of a penalty, even if the probability of injury is low, *i.e.*, even if the injury is unlikely to occur. The referee has no authority to impose penalties that are less or greater than those mandated by the Director's schedule. *Accident Prevention Div. v. Asana, supra*, 110 Or App at 107.

The SCO testified that, because employer has no written hazard communication program, there is no means for OR-OSHA to determine whether employer has a method for informing employees of the hazards or procedures for handing "nonroutine tasks," such as spills of hazardous chemicals. The SCO testified that, although not likely to occur, there was a risk of injury as a result of employer's violation:

> "I felt that the most likely hazard would be possible irritation or damage to the skin which would be relatively minor in nature due to chemicals used. It could also be irritation to the eyes if chemicals were splashed in the eyes."

The SCO considered the risk of injury to be of low probability, assigned a severity rating of "moderate" to the violation and proposed a penalty of $75.00, as indicated by the Director's penalty schedule. Relying on the SCO's testimony, the referee found that the violation had a moderate severity rating. Employer challenges that, contending that the penalties are inapplicable, because the violation, if any, was "minimal."

■ We conclude that the referee's finding that the violation had a severity rating of "moderate" is not supported by substantial evidence. The potential injury that the SCO described, irritation to the eye or skin, would appear, in a lay person's understanding, to be minor, and thus require a "low" severity rating. If there is any basis for concluding that the violation could cause "significant illness or injury," it is not in this record. Although the SCO gave his opinion that the severity rating is moderate, there is no explanation in this record of the distinction between moderate and low severity and no means by which it might be determined that the potential injury here is of moderate, as opposed to low, severity. Thus, no penalty should have been assessed.

Reversed as to assessment of penalty; otherwise affirmed.